UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANTWAIN D. ASHLEY,

                    Petitioner,

v.                                        Case No. 3:15-cv-7-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Antwain D. Ashley, an inmate of the Florida penal system, initiated this action on January 5, 2015, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254. He filed an Amended Petition (Doc. 8) on January 14, 2016. In the Amended Petition, Ashley challenges a 2007 state court (Duval County, Florida) judgment of conviction for armed robbery and armed burglary. Respondents have submitted a memorandum in opposition to the Amended Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Response; Doc. 15) with exhibits (Resp. Ex.). On June 9, 2016, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. 10), admonishing Ashley regarding his obligations and giving Ashley a time frame in which to submit a reply. Ashley submitted a brief in reply. See Petitioner's Response to Answer to Petition for Writ of Habeas Corpus (Reply; Doc. 16). This case is ripe for review.

## II. Procedural History

On March 8, 2007, the State of Florida charged Ashley with armed robbery (counts one and two) and armed burglary (count three). See Resp. Ex. 1 at 39-40, Amended Information. On August 6, 2007, Ashley entered a guilty plea to all three charges. See Resp. Exs. 1 at 63-64; 2 at 97-105, Transcript of the Plea Proceeding (Plea Tr.). On September 21, 2007, the court sentenced Ashley to a term of imprisonment of seventy-five years for count one with a twenty-year minimum mandatory term for actual possession and discharge of a firearm; a term of imprisonment of fifty years for count two with a ten-year minimum mandatory term for actual possession of a firearm, to run consecutively to count one; and a term of imprisonment of fifty years for count three with a ten-year minimum mandatory term for actual possession of a firearm, to run consecutively to count two. See Resp. Exs. 1 at 65-72; 10 at 205-26, Transcript of the Sentencing Hearing (Sentencing Tr.).

On March 4, 2008, with the benefit of counsel, Ashley filed a motion to correct sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2) (Rule 3.800(b)(2) motion). In the Rule 3.800(b)(2) motion, he requested a new sentencing hearing, at which the court could exercise its discretion as to whether to impose concurrent sentences instead of consecutive sentences. See Resp. Ex. 3 at 1-9. On April 28, 2008, the trial court denied the Rule 3.800(b)(2) motion. See id. at 10-160.

On direct appeal, Ashley, with the benefit of counsel, filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>See</u> Resp. Ex. 4. Ashley filed a pro se brief, arguing that the trial court erred when it: denied his motion to correct illegal sentence (ground one), and imposed a sentence that violated the Eighth Amendment (ground two). <u>See</u> Resp. Ex. 6. On February 4, 2009, the appellate court affirmed Ashley's conviction and sentence per curiam, <u>see</u> <u>Ashley v. State</u>, 4 So.3d 1222 (Fla. 1st DCA 2009); Resp. Ex. 7, and later denied his motion for rehearing on March 20, 2009, <u>see</u> Resp. Ex. 8. The mandate issued on April 7, 2009. <u>See</u> Resp. Ex. 7.

On June 11, 2009, Ashley filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion) and an amended motion (Amended Rule 3.850 motion) on April 1, 2010. <u>See</u> Resp. Ex. 9 at 1-20, 49-57. In his requests for post-conviction relief, he asserted that counsel (Robert Carl Davis) was ineffective because he failed to: file a motion to suppress evidence of a gun that he was charged with possessing and firing during the commission of his crimes (ground two); conduct an adequate pretrial investigation and raise a viable defense (ground five); and research the law on the court's discretion to sentence him as a youthful offender (ground seven). Additionally, Ashley stated that counsel misadvised him that the court would sentence him to no more than twenty years of

incarceration if he entered an open plea (ground one). He also asserted that the trial court was deprived of subject matter jurisdiction because the Information was defective (grounds three and four), and his sentence was illegal because the factual basis for his plea did not support a finding that he possessed and/or used a gun during the commission of the crimes (ground six). The State responded, <u>see</u> <u>id.</u> at 45-48, 116-27, and Ashley replied, <u>see</u> <u>id.</u> at 150-51. On March 3, 2011, the Court held an evidentiary hearing, at which Davis (his former trial counsel) testified. <u>See</u> Resp. Ex. 10 at 243-300, Transcript of the Evidentiary Hearing (EH Tr.). On March 6, 2013, the court denied his requests for post-conviction relief. <u>See</u> <u>id.</u> at 164-226. On January 28, 2014, the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> <u>Ashley v. State</u>, 132 So.3d 224 (Fla. 1st DCA 2014); Resp. Ex. 13, and the mandate issued on March 5, 2014, <u>See</u> Resp. Ex. 13.

During the pendency of the post-conviction proceedings, Ashley filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a) (Rule 3.800(a) motion) on October 31, 2013. <u>See</u> Resp. Ex. 14 at 1-170. The court denied the Rule 3.800(a) motion on December 26, 2013. <u>See</u> <u>id.</u> at 171-85. On June 3, 2014, the appellate court affirmed the court's denial per curiam, <u>see</u> <u>Ashley v. State</u>, 139 So.3d 890 (Fla. 1st DCA 2014);

Resp. Ex. 15, and the mandate issued on July 1, 2014, <u>see</u> Resp. Ex. 15.

On October 7, 2015, Ashley filed a pro se petition for writ of habeas corpus or second successive motion for post-conviction relief. <u>See</u> Resp. Ex. 16. The court dismissed Ashley's motion on September 26, 2017. <u>See</u> https://core.duvalclerk.com, case number 16-2006-CF-016512-AXXX-MA, docket entry 312.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts

of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Ashley's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), <u>cert</u>. <u>granted</u>, 137 S.Ct. 1203 (2017); <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277,

1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011) (citation omitted); see also Johnson v. Williams, 568 U.S. 289, 301 (2013).[1] Thus, the state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a

---

[1] The presumption is rebuttable and "may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100; see also Johnson, 133 S.Ct. at 1096-97. However, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances . . . ." Johnson, 568 U.S. at 302.

"contrary to" clause and an "unreasonable
application" clause. The "contrary to" clause
allows for relief only "if the state court
arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question
of law or if the state court decides a case
differently than [the Supreme] Court has on a
set of materially indistinguishable facts."
Id. at 413, 120 S. Ct. at 1523 (plurality
opinion).  The "unreasonable application"
clause allows for relief only "if the state
court identifies the correct governing legal
principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the
facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal
review for claims of state courts' erroneous
factual determinations. Section 2254(d)(2)
allows federal courts to grant relief only if
the state court's denial of the petitioner's
claim "was based on an unreasonable
determination of the facts in light of the
evidence presented in the State court
proceeding." 28 U.S.C. § 2254(d)(2). The
Supreme Court has not yet defined §
2254(d)(2)'s "precise relationship" to §
2254(e)(1), which imposes a burden on the
petitioner to rebut the state court's factual
findings "by clear and convincing evidence."
See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord
Brumfield v. Cain, 576 U.S. ---, ---, 135 S.
Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).
Whatever that "precise relationship" may be,
"'a state-court factual determination is not
unreasonable merely because the federal habeas
court would have reached a different
conclusion in the first instance.'"[2] Titlow,
571 U.S. at ---, 134 S. Ct. at 15 (quoting
Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct.
841, 849, 175 L.Ed.2d 738 (2010)).

---

[2] The Eleventh Circuit has described the interaction between
§ 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y
Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied,
137 S.Ct. 1103 (2017).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S.Ct. 2298 (2017); see also Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made"); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show[] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). Thus, "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235. To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact. Wilson, 834 F.3d at

1239; see Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), petition for cert. filed, No. 17-512 (Sept. 29, 2017).[3] However, in Wilson, the en banc Eleventh Circuit stated that the federal habeas court is not limited to assessing the reasoning of the lower court. 834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains flawed reasoning, [AEDPA] requires that [the federal court] give the last state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt," Renico,[4] 559 U.S. at 773, 130 S.Ct. 1855 (quoting Visciotti,[5] 537 U.S. at 24, 123 S.Ct. 357), and presume that it "follow[ed] the law," Donald,[6] 135 S.Ct. at 1376 (quoting Visciotti, 537 U.S. at 24, 123 S.Ct. 357).

Id. at 1238.

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S.Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338

---

[3] Although the United States Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it." Butts, 850 F.3d at 1205 n.2.

[4] Renico v. Lett, 559 U.S. 766 (2010).

[5] Woodford v. Visciotti, 537 U.S. 19 (2002).

[6] Woods v. Donald, 135 U.S. 1372 (2015).

(quoting Richter, 562 U.S. at 102-03). "This standard is 'meant to be' a difficult one to meet." Rimmer v. Sec'y, Fla. Dep't of Corr., 864 F.3d 1261, 1274 (11th Cir. 2017) (quoting Richter, 562 U.S. at 102). Thus, to the extent that Ashley's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

> different.[7] A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

---

[7] In the context of an ineffective assistance challenge to the voluntariness of a guilty or no contest plea, a petitioner must show there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lynch v. Sec'y, Fla. Dep't of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015) (citation omitted) (stating that, to succeed on a claim that counsel was ineffective because he advised petitioner to plead guilty, petitioner "must prove that: (1) counsel's advice was deficient; and (2) 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial'"), cert. denied, 136 S.Ct. 798 (2016).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S.Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014), cert. denied, 135 S.Ct. 2126 (2015); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Ashley asserts that counsel was ineffective because he misadvised him that the court would sentence him to no more than twenty years of incarceration if he entered an open plea. See Amended Petition at 6-7; Reply at 2-3. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. 9 at 2-6. The court held an evidentiary hearing, at which Davis testified. Identifying the two-prong <u>Strickland</u> ineffectiveness test and <u>Hill v. Lockhart</u> as the controlling law, the post-conviction court ultimately denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> With regard to the claims of ineffective assistance of counsel that were argued during the March 3, 2011 evidentiary hearing, this Court finds that the testimony given by Defendant's trial counsel, Robert Carl Davis, Esquire, is both more credible and more persuasive than Defendant's sworn allegations in the instant Motion. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). As such, this Court accepts his testimony, notes that he has been practicing as an attorney in good standing with the Florida Bar since 2003, and finds that he functioned as "reasonably effective counsel" in his investigation and preparation of the defense in the instant case. <u>See</u> <u>Coleman</u>, 718 So.2d at 829.[8] In addition, this Court finds the trial decisions made by Mr. Davis that are currently under attack in the instant Motion constituted sound trial strategy by a seasoned defense attorney.

---

[8] <u>Coleman v. State</u>, 718 So.2d 827 (Fla. 4th DCA 1998).

See <u>Songer v. State</u>, 419 So.2d 1044 (Fla. 1982); <u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Having established the preliminary findings with regard to the evidentiary hearing, this Court will now address the merits of Defendant's ineffective assistance of counsel claims.

<u>Ground One</u>

In Ground One, Defendant alleges counsel was ineffective for improperly advising him to openly plead to twenty (20) years, when he was actually sentenced to 175 years incarceration. Defendant further alleges counsel told him he "would get no more than twenty (20) years in prison," and never "properly inform[ed] him that he could have received one hundred and seventy-five years (175) by [sic] the court." (Def.'s Mot. 3.) Defendant asserts that if he had known the maximum amount of time to which he could have been sentenced, he would not have pled guilty and would have, instead, proceeded to trial. In this respect, Defendant also alleges his plea was not voluntarily, knowingly, and intelligently entered due to counsel's alleged misadvice.

Assuming <u>arguendo</u> counsel actually advised Defendant that he "would get no more than twenty (20) years in prison," such claim fails for lack of prejudice. This Court first looks to Defendant's sworn answers during the plea colloquy. <u>See</u> <u>Stano v. State</u>, 520 So.2d 278, 280 (Fla. 1988) (holding that a defendant may not seek to go behind his sworn testimony at a plea hearing in a postconviction motion); <u>Bir v. State</u>, 493 So.2d 55, 56 (Fla. 1st DCA 1986) (same); <u>Dean v. State</u>, 580 So.2d 808, 810 (Fla. 3d DCA 1991)(same); <u>see also</u> <u>Iacono v. State</u>, 930 So.2d 829, 831 (Fla. 4th DCA 2006) ("A defendant is not entitled to rely on an attorney's advice to commit perjury above the solemn oath that the defendant makes to the court to tell the truth."). At the plea hearing, the judge fully advised Defendant

that he faced a maximum possible sentence of life on each count with which he was charged, and that he faced a twenty-year minimum mandatory term on Count One and two ten-year minimum mandatory terms on Counts Two and Three. (Ex. G at 5, 6-7.)[9] The judge also informed Defendant that by entering his pleas, he was forfeiting certain constitutional rights. (Ex. G at 6.) Defendant testified that he had gone as far as the 11th grade in school, that he could read and write, that he was not under the influence of alcohol or any other drug or medication that could affect his ability to understand what was going on around him, and that he in fact understood everything the judge had asked him. (Ex. G at 5-7.) Defendant acknowledged having read, understood, and signed a written Plea of Guilty form. (Ex. G at 6.) Defendant further testified that he had reviewed the form with his attorney prior to signing it, and that his attorney had answered all of his questions. (Ex. G at 6.) Indeed, Defendant told the judge he had given his attorney permission to enter the guilty plea on his behalf, (Ex. G at 5), and defense counsel advised the judge that he had discussed the plea with Defendant at length on more than one occasion. (Ex. G at 8.) Thereafter, the judge properly accepted Defendant's plea as knowing, intelligent and voluntary. (Ex. G at 8-9.)

Second, Defendant signed a detailed Plea of Guilty Form. (Ex. A.) That form clearly indicates that Defendant "freely and voluntarily entered [his] plea of guilty," that he "ha[d] been advised of all direct consequences of the sentences which may be imposed," that he "ha[d] not been offered any hope of reward, better treatment, or certain type of sentence as an inducement to enter [his] plea," that he "ha[d] not been promised by anyone, including [his] attorney, that [he] would actually serve any less time than that set forth [in the agreement]," and that he

---

[9] See Plea Tr.

"ha[d] not been threatened, coerced, or intimidated by any person, including [his] attorney, in any way in order to get [him] to enter [his] plea." (Ex. A.)

Therefore, Defendant's claims that counsel was ineffective for improperly advising him to openly plead to twenty (20) years, and that his plea was not voluntarily, knowingly, and intelligently entered as a result of counsel's alleged misadvice, are refuted by the record. See Stano, 520 So.2d at 280; Bir, 493 So.2d at 56; Dean, 580 So.2d at 810; see also Iacono, 930 So.2d at 831. Further, given Defendant's signed Plea of Guilty form, his sworn testimony during the plea colloquy, and the totality of the circumstances of his case, there is no reasonable probability that he would have insisted on going to trial. See Grosvenor, 874 So.2d at 1181-82.[10] Thus, Defendant has failed to demonstrate prejudice and Ground One is denied.

Resp. Ex. 10 at 170-73. On appeal, Ashley filed a pro se initial brief, see Resp. Ex. 11 at 3-6; the State filed an answer brief, see Resp. Ex. 12 at 18-25; and the appellate court affirmed the court's denial of post-conviction relief per curiam, see Resp. Ex. 13.

In its appellate brief, the State addressed the claim on the merits, see Resp. Ex. 12 at 19-25, and therefore, the appellate court may have affirmed Ashley's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the

---

[10] Grosvenor v. State, 874 So.2d 1176 (Fla. 2004).

Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ashley is not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Ashley's claim, nevertheless, is without merit. The United States Supreme Court has determined that "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977). The Court stated:

> Courts should not upset a plea solely because of <u>post</u> <u>hoc</u> assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

<u>Lee v. United States</u>, 137 S.Ct 1958, 1967 (2017). Moreover, "[a] reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: If a defendant understands the charges against him, understands the consequences of a guilty

18

plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review." <u>Stano v. Dugger</u>, 921 F.2d 1125, 1141 (11th Cir. 1991). On this record, Ashley has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance.

At the plea hearing, counsel advised the court that Ashley "is going to be entering a plea straight up to the Court[]" as to all three counts. Plea Tr. at 100. The following colloquy ensued.

> THE COURT: Did you hear the plea your attorney just entered on your behalf?
>
> [ASHLEY]: Yes, sir.
>
> THE COURT: Did he have your permission to do that?
>
> [ASHLEY]: Yes, sir.
>
> THE COURT: Did you tell him he could do that because you are guilty?
>
> [ASHLEY]: Yes, sir.
>
> THE COURT: Do you understand that you face a maximum sentence of life on each of the counts with which you are charged?
>
> [ASHLEY]: Yes, sir.
>
> [PROSECUTOR]: And, Judge, if I may, on Counts 2 and 3 there is a ten-year minimum mandatory, and on Count 1 there is a 20-year minimum mandatory.
>
> THE COURT: You understand your minimum sentence is 20 years?
>
> [ASHLEY]: Yes, sir.

. . . .

THE COURT: Do you understand that there is no parole in Florida and that if you are sentenced to life in prison on any or all of these counts, you will spend the rest of your life locked up?

[ASHLEY]: Yes, sir.

THE COURT: Do you understand the minimum sentences on each count are day-for-day minimum sentences and that the very least amount of time that you would serve would be an actual term of 20 years?

[ASHLEY]: Yes, sir.

. . . .

THE COURT: Have you had enough time to talk to your lawyer and to think about this?

[ASHLEY]: Yes, sir.

[DEFENSE COUNSEL]: Your Honor, for purposes of the record, because of the early findings of Dr. Miller, my client does suffer from a diminished capacity and does not comprehend the way a normal 20-year-old would. So we have gone and spent, to an extensive degree, to make sure he completely understands what's going on before going forward.

THE COURT: How much time would you estimate you've spent discussing the plea with him?

[ASHLEY]: On two, possibly three occasions, at least two to three hours --

THE COURT: All right.

[ASHLEY]: -- maybe more.

Id. at 101-04.

At the evidentiary hearing, Davis testified that he discussed with Ashley whether he wanted to proceed to trial on four or five separate occasions, and Ashley ultimately decided that he did not want to go to trial. See EH Tr. at 268. Davis stated:

> I can't even count the number of times I went to the jail and discussed his case with him, because he had copies of all of his transcripts, all of the discovery, and we went over it time and time again, so that he knew inherently what the pitfalls were in his case.
>
> One of the victims he worked with. So identity wasn't an issue. When the police were looking for him, one of the witnesses that identified him was a family member.

Id. at 269. Davis testified that Ashley "made it inherently clear that he in no way, shape, or form, wanted to go to trial." Id. at 264.

After the state court evidentiary hearing, the circuit court resolved the credibility issue in favor of believing counsel's testimony over Ashley's sworn allegations in his Rule 3.850 motion. See Resp. Ex. 10 at 170-71 (stating "the testimony given by Defendant's trial counsel, Robert Carl Davis, Esquire, is both more credible and more persuasive than Defendant's sworn allegations in the instant Motion."). The Court notes that credibility determinations are questions of fact. See Martin v. Kemp, 760 F.2d 1244, 1247 (11th Cir. 1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Here, Ashley has

not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Ashley's claim is wholly unsupported, and therefore must fail.

Even assuming arguendo deficient performance by defense counsel, Ashley has not shown any resulting prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. At the plea hearing, Ashley acknowledged that he pled guilty because he was in fact guilty of the charges. See Plea Tr. at 101. Additionally, the State's evidence against him was substantial. The court found from the arrest affidavit that there was a factual basis for the plea. See id. at 105. If Ashley had proceeded to trial, and the jury had found him guilty of the offenses, he would have faced possible terms of life imprisonment. See id. at 101. Notably, the court informed him of the severe sentences he faced, and he acknowledged that he understood. See id. at 101-04. Accordingly, Ashley is not entitled to federal habeas relief on ground one.

### B. Ground Two

As ground two, Ashley asserts that counsel was ineffective because he failed to file a motion to suppress evidence of a firearm that he was charged with possessing and firing during the commission of the crimes. See Amended Petition at 8-9; Reply at 3-

4. He raised the claim in his Rule 3.850 motion in state court. <u>See</u> Resp. Ex. 9 at 7-9. After an evidentiary hearing, the post-conviction court ultimately denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> In Ground Two, Defendant alleges counsel was ineffective for failing to file a motion to suppress evidence of a gun that he was charged with possessing and firing during the commission of his crimes. Defendant asserts counsel was properly informed a weapon was at the home of Abdul Bissent, but that, other than Mr. Bissent's testimony, there was no evidence to prove Defendant had ever handled or owned this gun. Specifically, Defendant argues tests conducted by the Florida Department of Law Enforcement ("FDLE") demonstrate that Defendant did not handle the gun because his fingerprints did not match those found on the gun. But for counsel's alleged failure to file a motion to suppress, Defendant avers he would not have pled guilty.

> Initially, this Court notes that, to the extent Defendant is challenging the sufficiency of the evidence, he may not do so in a motion for postconviction relief. <u>Betts v. State</u>, 792 So.2d 589 (Fla. 1st DCA 2001); <u>Jackson v. State</u>, 640 So.2d 1173 (Fla. 2d DCA 1994). As for the merits of Defendant's claims, at the March 3, 2011 evidentiary hearing, Mr. Davis, Esq., testified that he made the strategic choice not to file a motion to suppress the gun.[11] Specifically, Mr. Davis said there were State witnesses, including some members of Defendant's own family, who, even absent the evidence of the gun, would have identified Defendant as the robber.[12] Mr. Davis stated that if he had filed a motion to suppress, these witnesses

---

[11] <u>See</u> EH Tr. at 263-66, 270.

[12] <u>See</u> EH Tr. at 265.

> would have taken the stand and it would have
> been "troubling" for Defendant's case.[13]
> Further, Mr. Davis stated that Defendant's
> choice to openly plead guilty added to his
> decision not to file a motion to suppress.[14]
> Based on such testimony, this Court finds
> counsel's failure to file a motion to suppress
> the gun constituted proper trial strategy. See
> Chavez v. State, 12 So.3d 199, 207 (Fla.
> 2009)(finding a strategic decision by counsel
> does not "constitute ineffective assistance if
> alternate courses of action have been
> considered and rejected and counsel's decision
> was reasonable under the norms of professional
> conduct"). Thus, counsel was not deficient and
> Ground Two is denied.

Resp. Ex. 10 at 173-74. On appeal, Ashley filed a pro se brief, see

Resp. Ex. 11 at 6-8; the State filed an answer brief, see Resp. Ex.

12 at 25-30; and the appellate court affirmed the court's denial of

post-conviction relief per curiam, see Resp. Ex. 13.

In its appellate brief, the State addressed the claim on the

merits, see Resp. Ex. 12 at 26-30, and therefore, the appellate

court may have affirmed Ashley's conviction based on the State's

argument. If the appellate court addressed the merits, the state

court's adjudication of this claim is entitled to deference under

AEDPA. After a review of the record and the applicable law, the

Court concludes that the state court's adjudication of this claim

was not contrary to clearly established federal law and did not

involve an unreasonable application of clearly established federal

---

[13] See EH Tr. at 275-76.

[14] See EH Tr. at 266, 275.

24

law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ashley is not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Ashley's claim still is without merit. The record supports the post-conviction court's conclusion that counsel's decision not to file a motion to suppress the gun constituted reasonable trial strategy. After an evidentiary hearing, the circuit court resolved the credibility issue in favor of believing counsel's testimony over Ashley's sworn allegations. <u>See</u> Resp. Ex. 10 at 170-71. Given the trial court's credibility determination, Ashley's claim is wholly unsupported, and therefore must fail.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Ashley must establish that no

competent attorney would have taken the action that counsel, here, chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Ashley has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Ashley has not shown prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Ashley's ineffectiveness claim is without merit since he has shown neither

deficient performance nor resulting prejudice. Accordingly, Ashley is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Ashley asserts that counsel was ineffective because he failed to conduct an adequate pretrial investigation and raise a viable defense. See Amended Petition at 10-11; Reply at 4-6. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. 9 at 16-17. After an evidentiary hearing, the post-conviction court ultimately denied the Rule 3.850 motion with respect to the claim, stating in pertinent part:

> In Ground Five, Defendant alleges counsel was ineffective for failing to conduct an adequate pre-trial investigation and to raise a viable defense. Specifically, Defendant asserts counsel was ineffective for failing to develop any defenses premised upon the suppression of the firearm evidence. Defendant argues that, as a result of counsel's alleged ineffective assistance, he entered an ill-advised guilty plea.
>
> Again, this Court notes that, to the extent Defendant is challenging the sufficiency of the evidence, he may not do so in a motion for postconviction relief. Betts, 792 So.2d 589;[15] Jackson, 640 So.2d 1173.[16] Moreover, as detailed in Grounds One and Two, above, Defendant's open plea of guilty was knowingly, intelligently, and voluntarily entered, and counsel's decision not to pursue a motion to suppress the gun was a strategic one. Thus, Defendant has failed to demonstrate both deficiency on the part of counsel for

---

[15] Betts v. State, 792 So.2d 589 (Fla. 1st DCA 2001).

[16] Jackson v. State, 640 So.2d 1173 (Fla. 2nd DCA 1994).

> failing to pursue the suppression of the
> firearm evidence, and resulting prejudice.
> Accordingly, Ground Five is denied.

Resp. Ex. 10 at 174-75. On appeal, Ashley filed a pro se brief, <u>see</u>

Resp. Ex. 11 at 12-13; the State filed an answer brief, <u>see</u> Resp.

Ex. 12 at 32-36; and the appellate court affirmed the court's

denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. 13.

In its appellate brief, the State addressed the claim on the

merits, <u>see</u> Resp. Ex. 12 at 32-36, and therefore, the appellate

court may have affirmed Ashley's conviction based on the State's

argument. If the appellate court addressed the merits, the state

court's adjudication of this claim is entitled to deference under

AEDPA. After a review of the record and the applicable law, the

Court concludes that the state court's adjudication of this claim

was not contrary to clearly established federal law and did not

involve an unreasonable application of clearly established federal

law. Nor was the state court's adjudication based on an

unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Accordingly, Ashley is

not entitled to relief on the basis of this claim.

Moreover, even assuming the state appellate court's

adjudication of the claim is not entitled to deference, Ashley's

claim, nevertheless, is without merit. The record supports the

post-conviction court's conclusion that Ashley failed to

demonstrate both deficiency on the part of counsel and resulting

prejudice. On this record, Ashley has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. According to Davis, he deposed numerous witnesses, <u>see</u> EH Tr. at 264, reviewed discovery with Ashley on multiple occasions, <u>see</u> <u>id.</u> at 269, and "was very worried" that if he "kept digging" and continued with pretrial investigations, "it might actually get worse" for Ashley, <u>id.</u> at 278. Davis testified that there was some DNA evidence that would inculpate Ashley and expose him to "additional problems." <u>Id.</u> Given the trial court's credibility determination in believing counsel's testimony over Ashley's sworn allegations, Ashley's claim is wholly unsupported, and therefore must fail.

Even assuming arguendo deficient performance by defense counsel, Ashley has not shown any resulting prejudice. Ashley's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Ashley is not entitled to federal habeas relief on ground three.

### D. Grounds Four and Seven

As grounds four and seven, Ashley asserts that counsel was ineffective because he failed to research the law relating to the trial court's discretion to sentence Ashley as a youthful offender. <u>See</u> Amended Petition at 12-13, 21-23. He raised the claims in his Amended Rule 3.850 motion, as ground seven, in state court. <u>See</u> Resp. Ex. 9 at 50-56. After an evidentiary hearing, the post-

conviction court ultimately denied the Amended Rule 3.850 motion

with respect to the claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to research the law on the court's discretion to sentence Defendant as a Youthful Offender. This Court construes Defendant's claim as also alleging that he would have qualified for Youthful Offender sentencing, and that he was prejudiced as a result of counsel's failure to investigate this sentencing possibility.
>
> Defendant's claim fails because he cannot demonstrate prejudice. At the sentencing hearing, defense counsel advised the judge that, after reviewing the Pre-Sentence Investigation Report and conferring with the State, he did not believe Defendant was entitled to be sentenced as a Youthful Offender because he had already received a Youthful Offender adjudication. (Ex. I at 119, 122.) <u>See</u> § 958.04(1)(c), Fla. Stat (2006).[17]

---

[17] Florida Statutes section 958.04(1) provides that the court may sentence as a youthful offender any person:

> (a) Who is at least 18 years of age or who has been transferred for prosecution to the criminal division of the circuit court pursuant to chapter 985;
>
> (b) Who is found guilty of or who has tendered, and the court has accepted, a plea of nolo contendere or guilty to a crime that is, under the laws of this state, a felony if the offender is younger than 21 years of age at the time sentence is imposed; and
>
> (c) Who has not previously been classified as a youthful offender under the provisions of this act; however, a person who has been found guilty of a capital or life felony may not be sentenced as a youthful offender under this act.

Yet, defense counsel argued that if Defendant
were eligible for a Youthful Offender
sentence, he would "be a viable candidate for
it because in a youth camp he can get the
direction and guidance that he needs rather
than just being incarcerated in an adult
prison." (Ex. I at 121-22.) In fact, prior to
imposition of sentence, the Assistant State
Attorney advised the judge that it did appear
Defendant was eligible for Youthful Offender
sentencing because the Assistant State
Attorney was not aware of any prior instances
where Defendant was adjudicated and sentenced
as a Youthful Offender. (Ex. I at 132-33.) The
Assistant State Attorney also advised that
Youthful Offender sentencing was purely within
the judge's discretion. (Ex. I at 132.)
Therefore, the judge was well aware of the
possibility of sentencing Defendant as a
Youthful Offender, and that such [a]
sentencing decision was purely within his
discretion. As such, Defendant has failed to
establish prejudice as required by <u>Strickland</u>.
Accordingly, Ground Seven is denied.

Resp. Ex. 10 at 175-76. On appeal, Ashley filed a pro se brief, <u>see</u>

Resp. Ex. 11 at 14-17; the State filed an answer brief, <u>see</u> Resp.

Ex. 12 at 39-44; and the appellate court affirmed the court's

denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. 13.

In its appellate brief, the State addressed the claims on the

merits, <u>see</u> Resp. Ex. 12 at 40-44, and therefore, the appellate

court may have affirmed Ashley's conviction based on the State's

argument. If the appellate court addressed the merits, the state

court's adjudication of this claims is entitled to deference under

AEDPA. After a review of the record and the applicable law, the

Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ashley is not entitled to relief on the basis of these claims

Moreover, even assuming the state appellate court's adjudication of the claims is not entitled to deference, Ashley's claims, nevertheless, are without merit. On this record, Ashley has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. At sentencing, Davis stated, "I don't believe my client's entitled to a YO [(youthful offender)] status." Sentencing Tr. at 209. Nevertheless, he argued that the mitigation presented by Dr. Miller supported a downward departure sentence. See id. at 209-10. Davis explained:

> [W]ere [Ashley] eligible for a YO [sentence], I would recommend that he would be a viable candidate for it because in a youth camp he can get the direction and guidance that he needs rather than just being incarcerated in an adult prison. However, in reviewing his PSI, I don't believe he might be eligible for that because I believe he received a youthful offender adjudication.

Id. at 211-12. The State responded:

> Based on my review of his record, I do not see any prior instances where he was

specifically adjudicated and sentenced as a YO. I do see that he has two prior sentences as a juvenile, but not specifically YO. So to err on the side of caution, the State would inform Your Honor that it does appear that the defendant is eligible for YO. However, based on our prior arguments, the State would ask Your Honor to instead sentence him according to the 10-20-Life.

Id. at 222-23.

At the state court evidentiary hearing, Davis described the sidebar discussion he had with Judge Merrett and Ms. Trudeau, the Assistant State Attorney.

If you look at the transcript, you'll see where we approached the bench sidebar. And, at that point in time, we were in Courtroom 2, if I'm not mistaken. We approached sidebar. Judge Merrett came down off the bench, and sat literally on the step, and we had one of the Florida Rules of Criminal Procedure, at that time, I believe, it was 2007, and we sat there, and we literally thumbed through the statute sidebar, to determine whether or not Mr. Ashley was, in fact, eligible, because this was a 10-20-Life case, and it was one of the ones that was first to be filed using Mr. Ashley under 10-20-Life, which is where the confusion, of whether or not he would or would not be eligible.

And we sat there, and we went through this four or five different points, to determine whether or not a youthful offender sanction [sic] would be appropriate in Mr. Ashley's case, specifically, was this a single and isolated case. And the Judge sat there and said, "Well, we got three separate incidents on three separate dates, so how do you view that he's going to be eligible as a youthful offender, being we have three separate dates? And if you're going to argue for a youthful offender, then you have to show remorse."

And, he goes, "Every time I've seen him
in court here, I haven't seen a whole lot of
remorse, because he doesn't act like it. The
way he's been acting, I don't know as though
he would."

And that's when I said, "Your Honor,
that's the whole reason why I brought in Dr.
Miller, and I presented testimony as to
mitigation. I brought in his school counselor
to show that he doesn't completely understand,
comprehend, the same way that a lot of other
people do, and he doesn't completely
understand the ramifications of, how do I want
to say it, to be held accountable for his
actions. He doesn't comprehend it the way you
and I may."

And I went line by line, and that's the
whole reason for having this guidance
counselor in school, and his [sic] Dr. Miller,
and having all the reports, and going to the
extent and length that I did.

. . . .

And that is what I did actually sidebar
with the Judge when Ms. Trudeau came back and
said, "Judge, he may, in fact, be eligible."
That was the whole purpose. We were up there
for an extensive period of time, literally,
going line by line through the Florida Rules
of Criminal Procedures [sic], to determine was
he eligible, and going through the components
of the youthful offender, and that was not on
the record.

Id. at 260-63. According to Davis, the trial judge was fully aware

of the criteria necessary for a youthful offender sentence. See id.

at 286-87. Given the trial court's credibility determination in

believing counsel's testimony over Ashley's sworn allegations,

Ashley's claims are wholly unsupported, and therefore must fail.

Assuming arguendo deficient performance by defense counsel, Ashley has not shown any resulting prejudice. He has not shown a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. His ineffectiveness claims are without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Ashley is not entitled to federal habeas relief on grounds four and seven.

## E. Grounds Five and Six

As grounds five and six, Ashley asserts that the trial court lacked subject matter jurisdiction because the Information was not based on sworn testimony of a material witness. See Amended Petition at 15-19. Respondents assert, see Response at 56, and this Court agrees, that grounds five and six do not relate back to any of the claims in the original Petition,[18] and therefore are due to be dismissed as untimely. Nevertheless, for purposes of the foregoing analysis, this Court will assume Ashley timely filed the claims.

Ashley raised the claims in his Rule 3.850 motion in state court. See Resp. Ex. 9 at 9-15. The post-conviction court denied the Rule 3.850 motion with respect to the claims, stating in pertinent part:

---

[18] See Mayle v. Felix, 545 U.S. 644 (2005)

In Grounds Three and Four, Defendant alleges the Information was defective, thereby divesting this Court of subject matter jurisdiction. As to Ground Three, Defendant specifically alleges that "no oath-bearing affidavit (testimony) from material witness(es)" exists. According to Defendant, this fatal defect deprived the trial court of subject matter jurisdiction over his case. As to Ground Four, Defendant alleges the charging instrument was filed in violation of constitutional mandate and, therefore, failed to invoke the jurisdiction of the court. Specifically, Defendant alleges the prosecutor knew that "no oath bearing affidavit (testimony) from material witness(es) existed, [and] yet knowingly presented a fraudulent charging instrument to invoke the jurisdiction of the trial court." (Def.'s Mot. 13.)

Because these two grounds for relief are related, this Court will consider them together. Additionally, this Court notes that Defendant's allegations as to Ground Three appear to allege the lack of a sworn affidavit from a material witness with regard to both the arrest warrant and the Information. Out of an abundance of caution, this Court will address both matters.

As to Defendant's allegations in Ground Three regarding the lack of a sworn affidavit for the arrest warrant, such claims are refuted by the record. Prior to issuance of the arrest warrant in the instant case, Detective T.W. Wildes tendered an affidavit for arrest warrant, in which he made sworn statements regarding the witness' statements. (Ex. D.)[19] Based on this affidavit, the arrest warrant was subsequently issued. (Ex. E.)[20] Thus, the allegations in Ground Three regarding the lack of a sworn affidavit for the arrest warrant are denied.

---

[19] See Resp. Ex. 10 at 190.

[20] See Resp. Ex. 10 at 191.

As to the allegations in Grounds Three and Four regarding the lack of a sworn affidavit for the Information and the resulting jurisdictional implications, these claims are also refuted by the record. By pleading guilty, a defendant waives any technical defects in the information. <u>See</u> Fla. R. Crim. P. 3.140(o), 3.190; <u>see</u> <u>also</u> <u>Colson v. State</u>, 717 So.2d 554, 555 (Fla. 4th DCA 1998)("A defendant waives a defect in the information if he fails to object before pleading to the substantive charges."); <u>Asmer v. State</u>, 416 So.2d 485, 487 (Fla. 4th DCA 1982). Further, "[w]here a defendant waits until after the State rests its case to challenge the propriety of an indictment [or information], the defendant is required to show not that the indictment [or information] is technically defective, but that it is so fundamentally defective that it cannot support a judgment of conviction." <u>Ford v. State</u>, 802 So.2d 1121, 1130 (Fla. 2001) (emphasis added); <u>State v. Burnette</u>, 881 So.2d 693, 694 (Fla. 1st DCA 2004)[.]

In the instant case, the Amended Information properly charged Defendant with two counts of Armed Robbery, and one count of Armed Burglary.[21] That is, the Amended Information contained a sufficiently detailed allegation of the essential elements of the respective charges, including specific references to the appropriate sections of the criminal code, Defendant's name, and the time and place of the commission of the offenses. (Ex. F.) Therefore, the Amended Information was not fundamentally defective, and properly conferred subject matter jurisdiction upon the trial court. <u>See</u> Fla. R. Crim. P. 3.140(o) ("No ... information ... shall be dismissed ... unless ... [it is] so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new

---

[21] <u>See</u> Resp. Ex. 1 at 39-40, Amended Information.

> prosecution for the same offense.")
> Accordingly, Grounds Three and Four are
> denied.

Resp. Ex. 10 at 165-67 (emphasis deleted). On appeal, Ashley filed a pro se brief, <u>see</u> Resp. Ex. 11 at 8-12; the State filed an answer brief, <u>see</u> Resp. Ex. 12 at 30-32; and the appellate court affirmed the court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. 13.

In its appellate brief, the State addressed the claims on the merits, <u>see</u> Resp. Ex. 12 at 30-32, and therefore, the appellate court may have affirmed Ashley's conviction based on the State's argument. If the appellate court addressed the merits, the state court's adjudication of this claims is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Ashley is not entitled to relief on the basis of these claims.

Moreover, even assuming the state appellate court's adjudication of the claims is not entitled to deference, Ashley's claims are still without merit. The claims present issues purely of state law not cognizable on federal habeas review. The purpose of

a federal habeas proceeding is to review the lawfulness of Ashley's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). Ashley's conviction and sentence do not violate the Constitution or laws or treaties of the United States.

For a defective Information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction. <u>DeBenedictis v. Wainwright</u>, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."). Under Florida law, the state circuit courts have jurisdiction over all felonies. <u>See</u> Fla. Stat. § 26.012(2)(d). Moreover, the Information in Ashley's case named Ashley; described the dates and locations of the offenses; stated the statutory basis for each offense; and properly set forth the elements of armed robbery and armed burglary. <u>See</u> Resp. Ex. 1 at 39-40. It therefore met the minimum requirements for invoking the jurisdiction of the state circuit court. Additionally, the Information contained the required sworn oath of the Assistant State Attorney, certifying that the allegations in the Information "are based upon facts that have been sworn to as true, and which,

if true, would constitute the offense therein charged," that the prosecution is instituted "in good faith," and that the facts are "based on testimony of material witnesses." Id. Such a sworn oath by the prosecutor that he received testimony under oath from the material witnesses for the offenses is sufficient pursuant to applicable Florida law. See Fla. R. Crim. P. 3.140(g).[22] Undoubtedly, the trial court had subject matter jurisdiction over Ashley's case since the Information charged him with armed robbery and armed burglary, both felonies, in violation of Florida Statutes sections 812.13(2)(a) and 810.02(2)(b). Thus, Ashley is not entitled to federal habeas relief on grounds five and six.

### VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Ashley seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this

---

[22] Florida Rule of Criminal Procedure 3.140(g) provides:

> Signature, Oath, and Certification; Information. An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.

substantial showing, Ashley "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 8) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Ashley appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of November, 2017.

MARCIA MORALES HOWARD
United States District Judge

sc 11/14
c:
Antwain D. Ashley, FDOC #J34708
Counsel of Record